IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**EVAN P. LUX**,

        Petitioner,

    v.

**BRANDON KELLY**,

        Respondent.

Case No. 6:21-cv-00004-IM

**OPINION AND ORDER**

**IMMERGUT, District Judge.**

      Petitioner Evan P. Lux ("Petitioner"), an individual in custody at Oregon State Penitentiary, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 ("Section 2254") challenging his 2016 sexual abuse convictions in Marion County, Oregon. Because Petitioner's claims are procedurally defaulted, the Petition for Writ of Habeas Corpus (ECF No. 1) must be denied.

///

///

PAGE 1 – OPINION AND ORDER

## BACKGROUND

On June 24, 2015, a Marion County grand jury returned an indictment charging Petitioner with seven counts of Sexual Abuse in the First Degree and one count of Tampering with Physical Evidence. (Resp't Exs. (ECF No. 21), Ex. 102 at 1-2.[1]) The charges arose from Petitioner's alleged abuse of CE, a child under the age of fourteen, on several occasions between January 1, 2008 and June 17, 2015, and Petitioner's destruction, alteration, concealment, or removal of physical evidence associated with those crimes. (*Id.*)

On December 22, 2015, the Marion County District Attorney charged Petitioner by information with one count of Encouraging Child Sexual Abuse in the Second Degree. (*Id.* at 3.) The charge arose from evidence recovered during the investigation of the initial sex abuse charges, and the State intended to present that evidence to a grand jury to join additional charges for trial if Petitioner did not accept a plea deal. (*Id.* at 8-10.) Petitioner subsequently agreed to plead guilty to three counts of first-degree sexual abuse and one count of second-degree encouraging child sexual abuse. (*Id.* at 15-16; Resp't Ex. 103.) In exchange, the State dismissed the other charges and agreed to cap the State's sentencing recommendation at 200 months of imprisonment. (Resp't Ex. 103.)

On December 23, 2015, Petitioner appeared for a plea hearing in the Marion County Circuit Court. The trial court reviewed the plea petition and confirmed with Petitioner that he understood that pleading guilty meant he would waive certain rights. (Resp't Ex. 104 at 16-18.) The trial court also confirmed with Petitioner that his plea was knowing and voluntary, and that no one had made threats or other promises that had influenced his decision to plead guilty. (*Id.* at

---

[1] When citing Respondent's Exhibits, the Court refers to the exhibit page numbers located in the lower right corner of each exhibit.

17-19.) Petitioner then formally entered guilty pleas on three counts of Sexual Abuse in the First Degree and one count of Encouraging Child Sexual Abuse in the Second Degree. (*Id.* at 19-21.) The trial court accepted Petitioner's guilty pleas, finding that they were "knowingly and voluntarily entered, and intelligently made with the advice of Counsel." (*Id.* at 20-21.)

During sentencing, the prosecutor reviewed the facts underlying Petitioner's guilty pleas, as follows:

> The child victim was [fourteen] when she was able to disclose to her mother that she had been sexually abused by [Petitioner] when she was -- she estimates in the third grade.

> Your Honor, the victim estimates that she was touched by [Petitioner] on her genitals numerous times, often a couple of times a week while she was sleeping. So, she would be asleep in her bedroom. He would enter her bedroom. And she would wake up to him either rubbing her genitals or she would wake up to -- with her pajamas in disarray or her pants unzipped or things of a similar nature.

> She attempted to disclose to her mother when was she was about [twelve] years old. And [Petitioner] was able to convince everyone that no, in fact nothing had happened. And at that point, Your Honor, the child victim noted that following that confrontation [Petitioner] didn't touch her any longer.

> However, on June 17th of 2015 while the victim and her mother were on a boat with [Petitioner], the victim was lying down on the boat. She had some swimming attire on. And [Petitioner] began rubbing her feet and her legs. She didn't take -- didn't have much concern. But at some point she felt like there was something harder on her leg.

> And later she surmised that it was in fact [Petitioner's] cell phone because later that same trip she was looking over his shoulder. And he had his cell phone in hand and she saw what appeared to be picture of her genital area. She reported that scared her a lot. Later on that same day she was taking a bath. He entered the bathroom and was telling her to get out.

> She was naked in the bathtub. And the child victim feared that [Petitioner] was in fact taking naked photographs of her. And she became very concerned for her safety. She was able to tell her mother exactly what had been going on. And her mother immediately took her out of the house, went to the Keizer Police Department where a Keizer police detective became involved.

> The child victim's mother participated in a number of pretext phone calls and text messages with [Petitioner]. In the process [Petitioner] was depleting the bank account of the -- their joint business account. He was trying to convince the victim's mother to speak with him in person.

PAGE 3 – OPINION AND ORDER

And eventually he admitted that he had in fact examined the victim's vaginal area while she was sleeping. He claimed that he was checking her genitals to see if she was a hermaphrodite. And Your Honor, he at that point continued to deny that any photographs were taken up her shorts.

The Keizer police detectives went out to [Petitioner]'s house. They asked for him to come out. He would not come out. He was in there for a number of hours until the Keizer Police Department were able to get him out of the house and to secure a search warrant to search the premises.

[Petitioner] passed [his] cell phone off to his stepfather so that that information would not be available readily. And once Keizer detectives secured all the computer evidence in the house, they realized that there was a hard drive missing, which remains missing to this day. They realized that the computers had been reformatted so there was no -- nothing on the computers.

The detectives eventually gained access to the telephone -- to the cellular telephone. [Petitioner] had passed it through his stepfather. And this case proceeded on the track to trial. Shortly before our trial date the Keizer police detectives, because they had been continuing to work on this case, were able to gain access to the cellular telephone.

They were able to finally have an update to the software that let them see images that [Petitioner] had deleted, including video of the child victim's genital area. So exactly consistent with what the child victim had said. [Petitioner] was in fact taking video of her [crotch] area, zooming in on it and making still photos.

. . . I should note that also on the cell phone were located nude images of other prepubescent up until teenage females on his phone that had been -- that he had attempted to delete, but for the detectives being able to utilize their law enforcement computer.

(Resp't Ex. 105 at 5-9.) The trial court ultimately sentenced Petitioner to a custodial term totaling 150 months. (Resp't Ex. 101.)

Petitioner filed a notice of appeal, but the Oregon Court of Appeals subsequently dismissed the appeal on Petitioner's motion. (Resp't Exs. 106-108.) Petitioner then sought postconviction relief, setting forth in an amended *pro se* petition numerous claims by title only and detailing the factual bases and legal arguments for those claims in a separate, seventy-four-page affidavit in support. (Resp't Exs. 110.) Although the postconviction court ultimately found that most of the *pro se* claims were "convoluted, contradictory, overlapping, and unsupported by credible evidence[,]" (Resp't Ex. 138 at 5), Petitioner's postconviction attorney did not file a

second amended petition to refine or otherwise clarify those claims. Instead, postconviction

counsel argued in Petitioner's trial memorandum an ineffective assistance claim based on trial

counsel's failure to move to suppress the evidence obtained from Petitioner's cell phone as

seized outside the area described in the search warrant. (Resp't Ex. 116 at 15-26.) After a trial

during which Petitioner testified, the postconviction court issued a lengthy written judgment

denying relief on all claims. (Resp't Exs. 137, 138.)

    With respect to the suppression claim advanced by postconviction counsel, the

postconviction court noted that it was "at variance" with the claim alleged in the amended *pro se*

petition. (Resp't Ex. 138 at 6.) Specifically, the postconviction court explained that the amended

*pro se* petition "claims that the search warrant was invalid because there was not a proper factual

basis for the warrants[,]" whereas the trial memorandum claimed that "the cell phone was seized

outside of the area described in the warrant." (*Id.*) The postconviction court thus concluded that

Petitioner had "attempt[ed] to raise a new claim [in the trial memorandum that was] not raised in

his Petition" and expressly denied the claim "as not being raised in the Petition." (*Id.*) The

postconviction court also explained, in the alternative, that trial counsel had reasonably

concluded that there was no basis for suppressing the contents of Petitioner's cell phone, and that

Petitioner had not proven that he would have insisted on proceeding to trial had such evidence

been suppressed. (*Id.* at 6-7.)

    Petitioner appealed, assigning as error the PCR court's denial of relief with respect to his

claim "that his trial attorney rendered ineffective assistance of counsel by failing to move to

suppress evidence derived from the illegal seizure of petitioner's cell phone." (Resp't Ex. 139 at

2.) The Oregon Court of Appeals affirmed without opinion, *Lux v. Cain*, 303 Or. App. 363

(2020), and the Oregon Supreme Court denied review, *Lux v. Cain*, 366 Or. 731 (2020).

PAGE 5 – OPINION AND ORDER

On January 4, 2021, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, raising three grounds for relief. (Pet. (ECF No. 1), at 11-14.[2]) In Ground One, Petitioner asserts that trial counsel was ineffective when he failed to move to suppress the evidence obtained from Petitioner's cell phone as unlawfully seized outside the area described in the search warrant. (*Id.* at 11-12.) In Ground Two, Petitioner asserts that "Oregon's law(s) allow[ing] for speculative date ranges for an offense are unconstitutionally broad" because "they do not allow a defendant to provide a defense of actual/factual innocence of charges rendered against him, or any other defense that shows the defendant was not in the proximity of the alleged victim." (*Id.* at 12-13.) Finally, in Ground Three, Petitioner asserts that his guilty plea was not knowing, intelligent, and voluntary because he was unaware of his right to unanimous jury verdict. (*Id.* at 13-14.) Respondent urges this Court to deny habeas relief, arguing that Petitioner's claims are procedurally defaulted or fail on the merits. (Resp. to Pet. (ECF No. 19) at 4-13.)

## DISCUSSION

### I.    Ground One is Procedurally Defaulted

In Ground One, Petitioner asserts that trial counsel was ineffective in failing to move to suppress evidence recovered from his cell phone, which he had given to his parents. (Pet. at 12.) Specifically, Petitioner alleges that the cell phone evidence was unlawfully obtained because "[t]he warrant served upon [Petitioner's] parents . . . listed no address and authorized only the securing of the data of the device and was a supplemental warrant to the primary [warrant] . . . which allowed for the securing of the cellular phone from [Petitioner's] Keizer, Oregon home, not his parents' Salem, Oregon home." (*Id.*) Respondent argues that the postconviction court

---

[2] The Court refers to the ECF-assigned pagination when citing to the Petition or the parties' briefing in this case.

denied Ground One on an independent and adequate state ground during Petitioner's

postconviction proceedings and that it is now procedurally defaulted. (Resp. to Pet. at 7-8; Reply

to Pet'r's Br. in Supp. (ECF No. 41) at 2-3.) The Court agrees.

### A.    Legal Standards

A habeas petitioner generally must exhaust all remedies available in state court, either on

direct appeal or through collateral proceedings, before a federal court may consider granting

habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A) (instructing that a court may not issue a writ of

habeas corpus on behalf of an individual in state custody unless "the applicant has exhausted the

remedies available in the courts of the State"); *see also Smith v. Baldwin*, 510 F.3d 1127, 1137

(9th Cir. 2007) (noting that a prisoner must first exhaust available remedies before a federal court

may consider the merits of a habeas petition). Generally, a petitioner satisfies the exhaustion

requirement "by fairly presenting the federal claim to the appropriate state courts . . . *in the*

*manner required by the state courts*, thereby 'afford[ing] the state courts a meaningful

opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915-16 (9th

Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)); *see also Insyxiengmay v.*

*Morgan*, 403 F.3d 657, 668 (9th Cir. 1999) (explaining that "[a] petitioner fairly and fully

presents a claim to the state court for purposes of satisfying the exhaustion requirement if he

presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing

the proper factual and legal basis for the claim").

When an individual in state custody fails to exhaust his federal claims in state court and

the state court would now find the claims barred under the applicable state rules, the federal

claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Similarly, if a federal constitutional claim is expressly rejected by a state court based on a state

procedural rule that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted. *Id.* at 729-30.

The independent and adequate state law doctrine prevents habeas petitioners from bypassing the state courts and presenting procedurally defaulted claims to the federal courts. *Id.* at 722. A state procedural rule is "independent" if it is not "interwoven with . . . federal law." *Michigan v. Long*, 463 U.S. 1032, 1040 (1983). "A state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed' at the time the rule was applied by the state court." *Poland v. Stewart*, 169 F.3d 573, 585 (9th Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)). "There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). The adequacy of a state rule is, itself, a federal question. *Beard v. Kindler*, 558 U.S. 53, 60 (2009).

Once the state has pleaded the existence of an independent and adequate state procedural ground as an affirmative defense, the burden shifts to the petitioner to place that defense in issue. *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003), *cert. denied*, 540 U.S. 938 (2003). The petitioner may satisfy this burden "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* Once the petitioner's burden is satisfied, however, "the ultimate burden is the state's." *Id.*

An individual in state custody is barred from raising procedurally defaulted claims in federal court unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

PAGE 8 – OPINION AND ORDER

B.    **Analysis**

As noted above, Petitioner attempted to advance a claim similar to Ground One during his postconviction proceedings, arguing in his trial memorandum that trial counsel should have suppressed the evidence gathered from his cell phone because the warrants authorized law enforcement to search for and seize the cell phone only from Petitioner residence. (Resp't Ex. 116 at 15-25.) The State argued in response that Petitioner's argument presented "essentially a whole different claim" than that outlined in the affidavit supporting the amended *pro se* petition and therefore fell "outside the scope of the operative Petition." (Resp't Ex. 132 at 1-4.) The State thus asserted that the claim was not properly before the postconviction court and filed a motion in limine to exclude any evidence directed toward the unpleaded issue. (*Id.*)

The postconviction court ultimately agreed, explaining:

The claim in the Petition and what is argued in the Petitioner's trial memorandum are at variance. The Petition claims that [the] search warrant was invalid because there was not a proper factual basis for the warrants. The Petitioner has failed to prove that the police did not have probable cause to arrest him. He also failed to prove that the phone recordings between himself and the victim's mother were recorded improperly. The Petitioner also failed to prove that his interrogation at the police department which lead to the police discovering that [Petitioner's parents] had possession of his cell phone was improper. Those are the issues raised in Attachment L which Petitioner alleges should have been the basis for a motion to suppress.

In his memorandum, Petitioner attempts to raise a new claim not raised in his Petition; that the contents of the cell phone should have been suppressed because the cell phone was seized outside of the area described in the warrant. This claim is denied as not being raised in the Petition.

(Resp't Ex. 138 at 6.) The postconviction court went on to explain, however, that even if the amended *pro se* petition could be read to include the claim advanced in Petitioner's trial memorandum, it would fail on the merits. (*Id.* at 6-7.)

Under Oregon law, a petition for postconviction relief "shall set forth specifically the grounds upon which relief is claimed and shall state clearly the relief desired." OR. REV. STAT.

("ORS") § 138.580. At the time of Petitioner's postconviction trial in January 2018, Oregon

Courts had long deemed any claims not pleaded in the petition waived. *See Bowen v. Johnson*,

166 Or. App. 89, 92-93 (2000) (holding that "[t]he Post-Conviction Hearing Act makes clear that

relief under the Act is available only as to claims that actually have been alleged in the petition

or amended petition and, indeed, that claims not raised in the petition are waived unless the

petitioner establishes that the claims could not reasonably have been asserted at that time"). The

postconviction court[3] explicitly invoked these state procedural rules when it denied Ground One

as "not being raised in the Petition." These rules were independent of federal law, well-

established when Petitioner defaulted, and sufficiently clear to put Petitioner on notice of

Oregon's postconviction pleading requirements. *See McGuigan v. Hall*, 312 F. App'x 986, 988

(9th Cir. 2009) (finding that Oregon's postconviction pleading rules were "clear and well-

established at the time of [the petitioner's] default in 2002, two years after *Bowen*"). Therefore,

Oregon's rule that all claims for postconviction relief must be raised in the petition constituted an

independent and adequate state law ground for denying Petitioner's claim.

Petitioner nevertheless insists that he fairly presented his claim, arguing at length that,

liberally construed, "the entirety" of Ground One was contained within his amended *pro se*

petition, and that the postconviction court's determination to the contrary was erroneous and

"explicitly at odds with the record." (Pet'r's Br. (ECF No. 37) at 13; Pet'r's Sur-Reply (ECF No.

---

[3] Because the Oregon Court of Appeals affirmed without opinion, and the Oregon
Supreme Court denied review, this Court must look to the postconviction court's written
judgment to determine whether a state procedural bar precludes federal review. *See Lambright v.
Stewart*, 241 F.3d 1201, 1205 (9th Cir. 2001) (explaining that "[t]o determine whether a state
procedural ruling bars federal review, we look to the 'last reasoned opinion on the claim'" and
presume later, unexplained decisions rest on the same ground) (quoting *Ylst v. Nunnemaker*, 501
U.S. 797, 804 (1991)).

42) at 6-9.) "Federal courts lack jurisdiction, however, to review state court applications of state procedural rules." *Poland*, 169 F.3d at 584; *see also Martinez v. Ryan*, 926 F.3d 1215, 1224 (9th Cir. 2019) (finding that the court lacked jurisdiction to address the petitioner's contention that the state postconviction court "misinterpreted the scope" of a state procedural rule). This Court thus lacks authority to consider the correctness of the postconviction court's application of the postconviction pleading rule, and Petitioner's insistence that the postconviction court wrongfully applied state law is insufficient to establish that the rule is inadequate.

Petitioner further argues that he fairly presented Ground One because the postconviction court "decided the issue on the merits" while merely "opining that the petition did not contain the claim[.]" (Pet'r's Br. at 15.) Petitioner, however, misrepresents the record. As clearly set forth above, the postconviction court explicitly denied Petitioner's claim on the basis that it was not included in the operative petition. (Resp't Ex. 138 at 6.) Although the postconviction court went on to explain that the claim still would fail on the merits even if properly contained within the petition, (*Id.* at 6-7), the alternative merits ruling does not nullify the unambiguously imposed state procedural bar. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (explaining that a state court "need not fear reaching the merits of a federal claim in an *alternative* holding" because the adequate and independent state ground doctrine, "by its very definition, . . . requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law"); *see also Zapata v. Vasquez*, 788 F.3d 1106, 1111 (9th Cir. 2015) (holding that "[a]lthough the [state] court went on to discuss the merits of the claim, because it separately relied on the procedural bar, the claim is defaulted"); *Bargas v. Burns*, 179 F.3d 1207, 1214 (9th Cir. 1999) (explaining that "[t]he alternative federal law holding of the [state] court in no way disturbs the independent state law ground for dismissal").

PAGE 11 – OPINION AND ORDER

In the alternative, Petitioner contends that the postconviction pleading rule as applied in *Bowen* is not adequate to bar federal review. (Pet'r's Sur-Reply at 10-14.) Specifically, Petitioner asserts that "subsequent Oregon decisional law has sharply limited *Bowen*'s application if not overruled it altogether," citing *Ogle v. Nooth*, 365 Or. 771 (2019). *Ogle*, however, was decided nearly two years after Petitioner's postconviction trial and therefore is not relevant to the instant adequacy analysis. *See Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997) (explaining that "the proper time for determining whether a procedural rule was firmly established and regularly followed is the time of [the] purported default") (simplified). Petitioner also argues that "Oregon courts did not regularly follow *Bowen*'s rule" at the time Petitioner sought postconviction relief, citing *Reynolds v. Lampert*, 170 Or. App. 780 (2000), and *Abbott v. Baldwin*, 178 Or. App. 289 (2001). (Pet'r's Sur-Reply at 10-14.) In both cases, however, the state court determined that "the ground for decision was within the scope of [the] petitioner's pleaded claims and thus was properly before the [postconviction] court." *Reynolds*, 170 Or. App. at 787; *see also Abbott*, 178 Or. App. at 295 (acknowledging that grounds not alleged in the petition are deemed waived, but explaining that the rule does not extend "to the *specific arguments* made in support of those claims[,]" and finding that "[a]lthough petitioner's specific arguments at trial were not identical to those articulated by the court, the relief granted is directly traceable to, and falls within the scope of, the claims alleged in the post-conviction petition"). In neither case did the state court grant relief on *claims* that were not contained within the scope of any properly pleaded petition. *Reynolds* and *Abbott* therefore do not demonstrate inconsistency in application of the rule. *See McGuigan*, 312 F. App'x at 988 (explaining that the differences in outcomes in *Reynolds* and *Abbott* were due to the "significantly more specific" pleadings in those cases rather than

inconsistency in application of the Oregon postconviction pleading rules). Petitioner thus fails to establish that the postconviction pleading rule is not an adequate rule to bar review.

Finally, Petitioner argues that even if the postconviction pleading rule was firmly established and regularly followed at the time of his postconviction trial, its application is "exorbitant" here. (Pet'r's Sur-Reply at 14-15.) Although Petitioner again points to subsequent developments in Oregon law—particularly as relates to the statutory interpretation at the heart of *Bowen*—he has failed to demonstrate that the postconviction court's application of the postconviction pleading rule was exorbitant under the circumstances of this case. *See Lee*, 534 U.S. at 380 (explaining that a state rule is not adequate if its "unyielding application" would disserve any perceivable government interest); *see also Walker v. Martin*, 562 U.S. 307, 316 n.4 (2011) (explaining that the holding in *Lee* was premised on the state court's "persnickety" application of the state rule, the petitioner's substantial compliance with the rule, and the fact that flawless compliance would have been unavailing given the trial court's reasoning).

In sum, Petitioner's first ground for relief is procedurally defaulted based on an independent and adequate state rule. Petitioner has made no showing that the default should be excused on the basis of cause and prejudice, or because failure to do so will result in a fundamental miscarriage of justice. Accordingly, habeas relief is precluded as to Ground One.

## II.   Petitioner is not Entitled to Habeas Relief on his Unargued Claims

Petitioner does not provide any legal argument in support of Grounds Two and Three. In addition, Petitioner does not challenge Respondent's arguments that those grounds are procedurally defaulted or without merit. Petitioner thus has failed to sustain his burden of demonstrating why he is entitled to habeas relief on those claims. *See* 28 U.S.C. 2248 (instructing that "[t]he allegations of a return to the writ of habeas corpus . . . , if not traversed,

shall be accepted as true except to the extent that the judge finds from the evidence that they are not true"); *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (recognizing that a habeas petitioner carries the burden of proving his case). Nevertheless, the Court has reviewed Grounds Two and Three and is satisfied that Petitioner is not entitled to habeas corpus relief on those claims.

## **CONCLUSION**

For the reasons stated, this Court DENIES the Petition for Writ of Habeas Corpus (ECF No. 1), and DISMISSES this proceeding, with prejudice. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore this Court DENIES a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

DATED this 8th day of November, 2023.

/s/ Karin Immergut
Karin J. Immergut
United States District Judge